**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| JOHN BRICKER, Individually and for Others Similarly Situated<br><br>v.<br><br>ETHOS MANAGEMENT PARTNERS LLC | **Case No. ________________**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. John Bricker (Bricker) brings this class and collective action to recover unpaid wages and other damages from Ethos Management Partners LLC (Ethos).

2. Ethos employed Bricker as one of its Hourly Employees (defined below) in New Mexico.

3. Bricker and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. But Ethos does not pay Bricker and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

5. Instead, Ethos pays Bricker and the other Hourly Employees non-discretionary bonuses that it fails to include in these employees' regular rates of pay for overtime purposes (Ethos's "bonus pay scheme").

6. And Ethos pays Bricker and the other Hourly Employees "per diems" each workday that it did not included in their regular rates of pay for overtime purposes (Ethos's "per diem pay scheme").

7. But these "per diems" are not designed to reasonably reimburse expenses they incur on behalf of Ethos.

8. Ethos's bonus pay scheme and per diem pay scheme violate the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA) by failing to compensate Bricker and the other Hourly Employees at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Ethos based on its substantial contacts with and business operations in New Mexico, including maintaining multiple offices in New Mexico and employing numerous employees in New Mexico.

12. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(2).

13. Specifically, Ethos employed Hourly Employees in New Mexico pursuant to its bonus pay scheme and/or per diem pay scheme.

## PARTIES

14. Ethos employed Bricker as a solids control technician from approximately June 2023 until May 2024.

15. Throughout his employment, Ethos paid Bricker under its bonus pay scheme and per diem pay scheme.

16. Bricker's written consent is attached as **Exhibit 1**.

17. Bricker brings this class and collective action on behalf of himself, and other similarly situated Ethos employees.

18. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Ethos employees who it paid under its bonus pay scheme and/or per diem pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

19. The putative New Mexico class of similarly situated employees is defined as:

> **All hourly Ethos employees in New Mexico who it paid under its bonus pay scheme and/or per diem pay scheme at any time. (the "New Mexico Class Members").**

20. The FLSA Collective Members and the New Mexico Class Members are collectively referred to as the "Hourly Employees."

21. Ethos is a Texas limited liability company with its principal place of business in Prosper, Texas.

22. Ethos may be served with process through its registered agent: **United States Corporation Agents, Inc., 10601 Clarence Dr., Suite 250, Frisco, Texas 75033**.

## FLSA Coverage

23. At all relevant times, Ethos was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, Ethos was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, Ethos was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

26. At all relevant times, Ethos had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, Bricker and the other Hourly Employees were Ethos's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

28. At all relevant times, Bricker and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

29. Ethos touts that "[w]ith yards and teams in New Mexico, Texas, Oklahoma, and Pennsylvania, [it] delivers reliable … comprehensive Solids Control Services … [through] a full suite of high-performance equipment designed to enhance drilling efficiency and fluid management."[1]

30. To meet its business objectives, Ethos employs workers, including Bricker and the other Hourly Employees, to transport and care for patients.

31. For example, Ethos has employed Bricker as a solids control technician in and around Eddy County, New Mexico from approximately June 2023 until May 2024.

32. Bricker's primary job duties include cleaning and maintaining rig equipment, running centrifuges, maintaining mud weight, documenting work progress and completed tasks, and loading trucks.

33. Throughout his employment, Bricker has regularly worked more than 40 hours a workweek.

[1] https://www.ethosep.com/why-ethos (last visited October 15, 2025).

34. Indeed, Bricker typically worked approximately 12 to 16 hours a day (and occasionally 24-hour shifts) 7 days a week "on the clock" (84 to 112 hours a workweek) for 2 to 4 weeks on followed by 1 or 2 weeks off.

35. Ethos paid Bricker approximately $27 an hour.

36. Likewise, the other Hourly Employees typically work approximately 84 to 112 hours a workweek "on the clock."

37. And Bricker and the other Hourly Employees are required to report their "on the clock" hours via Ethos's designated timekeeping system.

38. But Ethos does not pay Bricker and the other Hourly Employees at the required premium overtime rates for all hours worked in excess of 40 in a workweek.

39. Instead, Ethos pays Bricker and the other Hourly Employees under its bonus pay scheme.

40. Specifically, Ethos agrees to pay and subsequently pays Bricker and the other Hourly Employees non-discretionary bonuses, including performance bonuses,

41. But Ethos excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes.

42. For example, during the pay period ending February 4, 2024, Ethos paid Bricker a $492 "Bonus" that it excluded from his regular rate of pay for overtime purposes:

| | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| **Earnings** | | | | |
| Regular | 27.00 | 40.00 | 1080.00 | 3240.00 |
| Overtime | 40.50 | 47.50 | 1923.75 | 5771.25 |
| Bonus | | | 492.00 | 492.00 |
| Holiday | | | 0.00 | 175.00 |
| *Per Diem - Unit* | *55.00* | *7.00* | *385.00* | *1155.00* |
| **Gross** | | **87.50** | **3880.75** | **10833.25** |

43. Additionally, Ethos paid Bricker and the other Hourly Employees $55 "per diems," but only on days they actually worked.

44. Thus, Ethos did not calculate the "per diems" it paid to Bricker and the other Hourly Employees to reasonably reimburse business expenses they incurred, but rather, simply paid the "per diems" as additional wages for time worked.

45. Thus, under its bonus pay scheme and per diem pay scheme, Ethos does not pay Bricker and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek, in violation of the FLSA and NMMWA.

## Class and Collective Action Allegations

46. Bricker brings his claims as a class and collective action under FED. R. CIV. P. 23 and Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

47. Like Bricker, the other Hourly Employees are victimized by Ethos's bonus pay scheme and/or per diem pay scheme.

48. Other Hourly Employees worked with Bricker and indicated they were paid in the same or similar manner under Ethos's bonus pay scheme and/or per diem pay scheme.

49. Based on his experiences with Ethos, Bricker is aware Ethos's bonus pay scheme and per diem pay scheme were imposed on other Hourly Employees.

50. The Hourly Employees are similarly situated in the most relevant respects.

51. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

52. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

53. Rather, Ethos's bonus pay scheme and per diem pay scheme render Bricker and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates—based on all remuneration—for all hours worked in excess of 40 in a workweek.

54. Ethos's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

55. Ethos's records also show it paid Bricker and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

56. Ethos's records additionally show it paid Bricker and the other Hourly "per diems" only for days worked that it failed to include in their regular rates of pay for overtime purposes.

57. The back wages owed to Bricker and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

58. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Ethos's records, and there is no detraction from the common nucleus of liability facts.

59. Therefore, the issue of damages does not preclude class or collective treatment.

60. Bricker's experiences are typical of the experiences of the other Hourly Employees.

61. Bricker has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

62. Like each Hourly Employee, Bricker has an interest in obtaining the unpaid wages owed under federal and New Mexico law.

63. Bricker and his counsel will fairly and adequately protect the interests of the Hourly Employees.

64. Bricker retained counsel with significant experience in handling complex class and collective action litigation.

65. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Ethos will reap the unjust benefits of violating the FLSA and NMMWA.

66. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

67. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Ethos.

68. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

69. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

70. Among the common questions of law and fact are:

a. Whether Ethos paid the Hourly Employees non-discretionary bonuses;

b. Whether Ethos failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

c. Whether Ethos paid the Hourly Employees "per diems" only for days worked;

d. Whether Ethos failed to include "per diems" in calculating the Hourly Employees' regular rates of pay;

e. Whether Ethos failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

f. Whether Ethos's failure to pay overtime wages as required by the NMMWA under its bonus pay scheme and/or per diem pay scheme constitutes a continuing course of unlawful conduct;

g. Whether Ethos's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

h. Whether Ethos's violations were willful.

71. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

72. The Hourly Employees are known to Ethos, are readily identifiable, and can be located through Ethos's business and personnel records.

## ETHOS'S VIOLATIONS WERE WILLFUL

73. Ethos knew it employed Bricker and the other Hourly Employees.

74. Ethos knew it was subject to the FLSA's overtime provisions.

75. Ethos knew the FLSA required it to pay non-exempt employees, including Bricker and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

76. Ethos knew Bricker and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Ethos's timekeeping system.

77. Ethos knew Bricker and the other Hourly Employees were non-exempt employees entitled to overtime wages.

78. Ethos knew it paid Bricker and the other Hourly Employees non-discretionary bonuses and "per diems."

79. Ethos knew it was required to include these non-discretionary bonuses and "per diems" in their regular rates of pay.

80. Ethos knew these non-discretionary bonuses and "per diems" were not included in Bricker's and the other Hourly Employees' regular rates of pay for overtime purposes.

81. And Ethos knew the FLSA requires it to pay Bricker and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

82. Ethos's failure to pay Bricker and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

83. Ethos knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and per diem pay scheme that deprived Bricker and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## COUNT I

## FAILURE TO PAY OVERTIME UNDER THE FLSA (FLSA COLLECTIVE)

84. Bricker brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

85. Ethos violated, and is violating, the FLSA by employing non-exempt employees such as the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

86. Ethos's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

87. Accordingly, Ethos owes the FLSA Collective Members the difference between the wages actually paid and the proper overtime wages actually earned.

88. Because Ethos knew or showed reckless disregard for whether its bonus pay scheme and per diem pay scheme violated the FLSA, Ethos owes the FLSA Collective Members these wages for at least the past 3 years.

89. Ethos is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

90. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA (NEW MEXICO CLASS)

91. Bricker brings his NMMWA claim on behalf of himself and the other New Mexico Class Members pursuant to FED. R. CIV. P. 23.

92. The conduct alleged in this Complaint violates the NMMWA. N.M.S.A. §§ 50-4-20, *et seq*.

93. At all relevant times, Ethos has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-1; *see also* N.M.S.A. § 50-4-21.

94. At all relevant times, Ethos has been an "enterprise in business" within the meaning of the NMMWA.

95. At all relevant times, Bricker and each New Mexico Class Member have been covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

96. At all relevant times, Ethos has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

97. The NMMWA requires employers, like Ethos, to pay employees, including Bricker and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times employees' regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in any one 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

98. Bricker and the Hourly Employees are entitled to overtime wages under the NMMWA for all hours worked in excess of 40 hours in a 7-day workweek.

99. Ethos violated, and is violating, the NMMWA by employing non-exempt employees, such as Bricker and the other New Mexico Class Members, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

100. Ethos's unlawful practices at issue, its bonus pay scheme and per diem pay scheme, were, and are, part of a continuing course of conduct, entitling Bricker and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

101. Ethos's unlawful conduct harmed Bricker and the New Mexico Class Members by depriving them of the premium overtime wages they are owed.

102. Accordingly, Bricker and the other New Mexico Class Members are entitled to recover their unpaid overtime wages in an amount equal to 1.5 times their regular rates of pay for all hours worked in excess of 40 in a seven-day workweek, "an additional amount equal to twice the unpaid …

wages" as treble damages, and all reasonable attorneys' fees and costs incurred in this action. N.M.S.A. § 50-4-26(C), (E).

## JURY DEMAND

103. Bricker demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Bricker, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action and certifying the putative class pursuant to FED. R. CIV. P. 23;

c. An Order designating Bricker and his counsel to represent the interests of the putative class;

d. An Order finding Ethos liable to Bricker and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Ethos liable to Bricker and the other Hourly Employees for all unpaid overtime wages owed under the NMMWA, and treble damages in an amount equal to two times their unpaid overtime wages;

f. A Judgment against Ethos awarding Bricker and the other Hourly Employees all their unpaid overtime wages, liquidated damages,

treble damages, and any other penalties available under the FLSA and/or NMMWA;

g. An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

h. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: October 20, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: *<u>/s/Michael A. Josephson</u>*

Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR BRICKER & THE HOURLY EMPLOYEES**